**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Hamed Salimabadi,

      Petitioner

v.

Kristi Noem, et al.,

      Respondents

Case No.: 2:25-cv-02508-JAD-DJA

**Order Granting Habeas Petition and Closing Case**

[ECF No. 1]

Petitioner Hamed Salimabadi was admitted to the United States as a lawful permanent resident in 1999 but later ordered removed to Iran, his country of origin, in 2006. The United States was unable to secure Salimabadi's removal in 2006 and again after detaining him for six months in 2010, so he has been living in this country at liberty and under an order of supervision issued by the Department of Homeland Security. But on June 25, 2025, Immigration and Customs Enforcement (ICE) officials arrested Salimabadi and detained him at the Nevada Southern Detention Center.

In December 2025, Salimabadi filed a counseled petition for a writ of habeas corpus seeking his immediate release from custody, as well as an emergency motion for a temporary restraining order (TRO) for his release pending a decision on the habeas petition. He contends that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that his arrest was arbitrarily and discriminately motivated by his national origin. Because Salimabadi had good reason to believe he would not be removed in the reasonably foreseeable future and the government failed to bring forth any evidence that efforts to remove him were

underway, I converted the TRO to a preliminary injunction, granted it, and ordered Salimabadi's immediate release.

I now grant Salimabadi's habeas petition. Salimabadi was detained for at least six months with no good reason to believe his removal was forthcoming, and the government has failed to present any evidence suggesting otherwise. Salimabadi has also shown that ICE failed to follow its own regulations when it arrested him and deprived him of the process that should have accompanied his re-detention. I don't reach Salimabadi's national-origin-discrimination claim because resolution of his other claims entitles him to complete relief.

So I prohibit the respondents from re-detaining Salimabadi absent a demonstrable change in circumstances regarding ICE's ability to remove him to Iran. He is to remain released under the conditions of his preexisting order of supervision.

**Background**

Hamed Salimabadi is an Iranian citizen and was admitted to the United States as a lawful permanent resident in 1999 when he was approximately two years old.[1] He was ordered removed in 2006 and was released under an order of supervision because his removal could not be effectuated.[2] Salimabadi was detained by ICE a second time in 2010 and was held for more than 180 days before the federal government again released him on an order of supervision.[3] At some point during that detention, Salimabadi had a phone call with an Iranian consular officer who "explicitly refused to issue [him] any travel documents and informed him that Iran would not recognize him as an Iranian national for purposes of repatriation."[4]

---

[1] ECF No. 1 at ¶ 42.

[2] *Id.* at ¶ 44.

[3] *Id.* at ¶ 45.

[4] *Id.* at ¶ 46.

Salimabadi remained at liberty for the next 15 years, through three different administrations. But on June 25, 2025, ICE arrested and detained him for a third time. He alleges that he was detained as part of a concerted ICE effort to "round up all Iranians" following United States' commencement of military operations in Iran.[5] He also recounts that he was told by an ICE officer that the officer "was unsure why he was being detained"[6] because Iran wouldn't accept him.[7]

The government asserts that Salimabadi was arrested under a "warrant of removal/deportation" that it provided as an exhibit to its response to his TRO motion.[8] That document claims that he was taken into custody under "241(a)(5) of the" Immigration and Nationality Act (INA).[9] That provision is codified as 8 U.S.C. § 1231(a)(5), which permits the reinstatement of removal orders against noncitizens who were deported or voluntarily left the United States, then illegally returned.[10] At the hearing on Salimabadi's TRO motion, the government conceded that this provision does not apply to Salimabadi. The warrant also uses Salimabadi's name four times, and each iteration is spelled differently—and wrong.[11] Although the government claims that Salimabadi violated his conditions of supervision by failing to affirmatively seek documents that would secure his removal to Iran, it has produced no evidence supporting that narrative or showing that his supervision was revoked for that reason.

---

[5] *Id.* at ¶ 48.

[6] *Id.*

[7] ECF No. 1-1 at ¶ 17.

[8] ECF No. 9 at 3; ECF No. 9-4.

[9] ECF No. 9-4.

[10] 8 U.S.C. § 1231(a)(5).

[11] *See* ECF No. 9-4.

**Discussion**

**A.      This court has jurisdiction to order relief related to Salimabadi's habeas petition.**

The constitution provides that the writ of habeas corpus is "available to every individual detained in the United States."[12]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that the petitioner is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States's immigration laws.[13]

The government sees it differently.  It argues that this court is without jurisdiction to consider Salimabadi's case because 8 U.S.C. § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[14] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[15]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention,[16] and "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal

---

[12] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[13] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[14] 8 U.S.C. § 1252(g).

[15] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

[16] *See Zadvydas*, 533 U.S. at 687.

orders."[17]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[18] that bars challenges only to the three discrete actions enumerated in the statute.[19]

The government's § 1252(b)(9) argument fares no better.  Section 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[20] Salimabadi does not challenge the decision to commence his removal proceeding or to execute his removal order, but rather ICE's decision to detain him indefinitely.  Because this court has jurisdiction to consider those challenges, I now adjudicate their merits.

**B.      Salimabadi has shown that he is entitled to relief on his prolonged-detention claim.**

   *1.       The government has authority to detain noncitizens after they have been ordered removed.*

The INA and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is

---

[17] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[18] *Id.* at 996.

[19] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'").

[20] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

released from non-immigration detention.[21]  During that 90-day period, detention is mandatory.[22]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[23] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[24]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[25]

### 2.    *The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[26]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[27]  It determined that six months of post-removal-period detention is presumptively reasonable.[28]  But after six months, the noncitizen must "provide[] good reason to believe that

[21] 8 U.S.C. § 1231(a)(1)(B).

[22] 8 U.S.C. § 1231(a)(2)(A).

[23] *Zadvydas*, 533 U.S. at 682.

[24] 8 U.S.C. § 1231(a)(6).

[25] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[26] *Id.* at 690.

[27] *Id.* at 699.

[28] *Id.* at 701.

there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[29]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[30]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[31]

### 3.    *Salimabadi has shown good reasons to believe that he will not be removed in the reasonably foreseeable future.*

Salimabadi was detained for longer than six months, taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.[32]  So Salimabadi bears the initial burden of showing that there are "good reason[s] to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[33]

---

[29] *Id.*

[30] *Id.*

[31] *Id.* (cleaned up).

[32] The parties disagree over whether Salimabadi's post-removal detention periods in 2006 and 2010 should count toward the *Zadvydas* calculus.  Many courts have found that prior detention periods must be considered; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  Because Salimabadi's current detention exceeds the six-month threshold and I find that the government has not shown that he will be removed in the reasonably foreseeable future even when considering that his detention has not yet extended too far beyond that presumptively reasonable period, I need not and do not address this issue here.

[33] *Zadvydas*, 533 U.S. at 701.

Salimbadi has been in ICE's custody for at least six months now, but it appears that he was also in ICE custody under his final removal order for at least 180 days sometime around 2010.[34]  He was ordered removed in 2006, and ICE has been unable to remove him for approximately *two decades*.  Salimabadi also alleges that he has been told by an Iranian consulate officer that he will not be recognized as an Iranian national for repatriation purposes.[35]  And he alleges that an ICE field officer told him after his 2025 arrest that he didn't know why Salimabadi has been arrested and that Iran wouldn't accept him.[36]  From these facts I can conclude that Salimabadi is likely to succeed in showing that he has good reasons to believe he will not be removed any time soon.[37]

### 4. *The government has failed to produce evidence suggesting that Salimabadi's removal is foreseeable.*

The government fails to meet its shifted burden to "respond with evidence"[38] rebutting Salimabadi's showing.  Its attorneys state without any support that "[r]ecent developments between the Iranian and United States government shows [sic] that Iran has accepted

---

[34] The government did not confirm or deny that Salimabadi was in ICE custody at that time.  But Salimabadi alleges in his verified complaint that he was, and the government submitted an exhibit showing that he received a new supervision order in 2011, adding credence to his allegations.  *See* ECF No. 9-3 at 4 (order of supervision addendum dated October 4, 2011).

[35] ECF No. 1 at ¶ 46.  At the hearing, counsel for Salimabadi represented that this conversation happened while Salimabadi was in ICE custody around 2009.

[36] *See* ECF No. 1-1 at ¶ 17.

[37] The government contends that Salimabadi's claims are based purely on speculation.  ECF No. 9 at 11–12.  Not so.  His verified allegations stem from hard truths—like ICE's inability to secure his removal for two decades—and statements made to him by Iranian officials and ICE field agents indicating that his removal is unlikely or impossible.  The government fails to meaningfully address those facts—let alone rebut them.

[38] *Zadvydas*, 533 U.S. at 701.

8

approximately 100 Iranian citizens who have been deported by the United States."[39]  But that statement is not supported by any evidence.[40]

Even if I accepted the government's attorney's statement as true, it does not meet the government's burden to show that there is a significant likelihood that Salimabadi will be removed in the reasonably foreseeable future.  The fact that Iran has accepted some deportations does not show that it will continue to do so, nor that it has reconsidered its previous conclusion that Salimabadi would not be considered an Iranian national for repatriation purposes.  So even if Iran has accepted some deportations, the government has failed to provide any indication that it would accept *Salimabadi*.

> **5.      *The government's unsupported assertions that Salimabadi has failed to assist in effectuating his deportation are insufficient to show that the delay in removal is Salimabadi's fault.***

The government also contends that Salimabadi was arrested and has not been removed because he has not been making good-faith efforts to obtain travel documents from Iran.  It claims that, "[a]fter 23 years since his final removal order, there does not appear to be any

---

[39] ECF No. 9 at 12.

[40] At the hearing, respondents' counsel relied on a BBC article that was attached to its filings in a different case.  That article does not constitute competent evidence.  It reports that Tehran officials confirmed that "a chartered plane carrying more than 50 Iranians" departed from the United States to Iran.  Khashayar Joneidi, *US deports second group of Iranian nationals, officials say*, BBC (Dec. 8, 2025), https://www.bbc.com/news/articles/c23e77ln3d1o.  But it also says that "US immigrations officials could not 'confirm or deny a flight' for security reasons." *Id.*  And even if I accept that this flight occurred, nothing in this article provides me with evidence that Iran and the United States have "reopened diplomatic relations" as the government suggested at the hearing.  Nor does it provide support for the implied argument that, because Iran accepted 50 deportees, it will accept even more, and one of those future deportees will be Salimabadi.  I also note that the parties' briefing was submitted before the United States and Iran became engaged in armed conflict.  I make no findings concerning the potential impact that development might have on USCIS's ability to continue sending repatriation flights to Iran.

indication that [Salimabadi] has made any efforts to obtain" those documents.[41]  At the hearing, the government implied that ICE cannot start making efforts to remove Salimabadi without his affirmative assistance.

The Ninth Circuit has affirmed the denial of habeas petitions when ICE showed that a noncitizen refused to fill out a passport application or took other steps to thwart removal efforts.[42]  But the government could provide no evidence of any such refusal to cooperate in this case.  It offers only the unsupported assertion that Salimabadi didn't provide any evidence showing that he independently sought his own removal.  Plus, Salimabadi's counsel represented that Salimabadi arrived in the United States as an infant, the only Iranian documentation of his citizenship that he had was a birth certificate, and he gave that birth certificate to ICE officials when he was first detained in 2006.  The government has provided no support for the contention that he should have been doing something more, or that doing something more was required by his order of supervision.  Nor does it meaningfully respond to Salimabadi's allegation that he did speak to an Iranian consular official in 2010 in an effort to obtain documents and was told that he would not be accepted in Iran.[43]  So I grant Salimabadi's habeas petition on the ground that his detention exceeded the government's statutory authority under *Zadvydas*, and I prohibit the

---

[41] ECF No. 9 at 3.

[42] *See, e.g.*, *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (affirming the denial of habeas relief for a noncitizen who refused to fill out a passport application to his home country, noting that the noncitizen "himself is responsible for his plight"); *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003) (holding that, "when a[ noncitizen] refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the [noncitizen] cannot meet his or her burden to show [that] there is no significant likelihood of removal in the reasonably foreseeable future").

[43] Since the TRO hearing, the government has not supplemented the record with any additional evidence showing a likelihood of foreseeable removal.

federal respondents from re-detaining Salimabadi absent proof of changed circumstances demonstrating that his removal to Iran is likely to occur in the reasonably foreseeable future.

**C.      Salimabadi has shown that ICE arrested him without following its own re-detention provisions.**

Salimabadi also contends that ICE arrested him in a manner that violates its own regulations.  To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations.  8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[44] Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[45]  If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[46]

The government contended at the TRO hearing that Salimabadi's arrest was proper because failing to affirmatively seek removal documents violated his conditions of supervision. As discussed at length at the TRO hearing, that argument appears specious for several reasons, the chief ones among them being that (1) the orders of supervision that the government attached to its response do not appear to require Salimabadi to affirmatively seek travel documents when

---

[44] 8 C.F.R. § 241.4(l)(2)(iii).

[45] 8 C.F.R. § 241.13(i)(2).

[46] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

he wasn't asked to assist immigration officials with those efforts,[47] and (2) no evidence suggests that his release was formally revoked for that reason or that he was informed that this was the reason he was arrested.  The only document the government provided to suggest that it provided notice of Salimabadi's revocation is a "warrant of removal/deportation" letter that spells his name wrong four different times and cites an inapplicable statute as justification for his detention.[48]  That document does not demonstrate that the government followed its regulations when it arrested Salimabadi.

"It is a well-known maxim that agencies must comply with their own regulations."[49]  And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[50]  It's not reasonably disputed that those regulations were not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Salimabadi's habeas petition on this ground, too, and I order that he remain at liberty under the same conditions contained in the order of supervision that controlled before his June 2025 arrest.[51]

---

[47] *See* ECF No. 9-3.

[48] *See supra* at p. 3.

[49] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[50] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

[51] I do not address Salimabadi's national-origin-discrimination claim because he is entitled to the total relief he seeks based on his other claims.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Hamed Salimabadi's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 5] is GRANTED.  The federal respondents are enjoined from re-detaining Hamed Salimabadi absent proof of changed circumstances making his removal reasonably foreseeable.  Salimabadi is to remain at liberty under the same conditions contained in the order of supervision that controlled before his June 2025 arrest.**  The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 21, 2026

13